UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE PELLEY<br>plaintiff | : | Civil Action No.<br>3:01 CV 1767 (CFD) |
| v. | : | |
| SUPERVALU, INC.<br>Defendant | : | October 27, 2003 |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a negligence action arising out of an accident at the defendant's warehouse on October 19, 1999. At the time, the plaintiff George Pelley was employed as a truck driver for the Indian Valley Trucking Company and was delivering a load of merchandise to the defendant's warehouse facility in Suffield, Connecticut. The plaintiff alleges that while he was operating an electric pallet jack provided to him by the defendant, the automatic shut off on the jack failed causing the pallet jack on which he was riding to crash into a metal bar. As a result of the accident, the plaintiff alleges that he suffered severe and permanent physical injuries. (Complaint)

The electric pallet jack in question is one on which the operator stands while operating it. The single count complaint alleges that the defendant was negligent by, among other things, failing to maintain the pallet jack in a safe operating condition, failing to inspect the jack, failing to provide the plaintiff with safe equipment in order to perform the requested functions, and other negligence as may be revealed though discovery. (Complaint, ¶ 10)

The defendant has moved for summary judgment contending that there is no genuine issue as to the pallet jack being serviced as needed and on a regular basis and not having any similar prior problems. As shown below, the defendant's motion for summary judgment should be denied.

Because the plaintiff was a business invitee, the defendant treats this case as a premises liability case. However, the premises liability cases cited by the defendant are distinguishable and the instant action involves not a defect or dangerous condition of the premises but a piece of equipment that the defendant failed to properly maintain in safe operating condition. Thus, the defendant's reliance on premises liability cases is misplaced.

In Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135 (2002), the plaintiff generally alleged that the defendant failed to provide a safe and secure area in its building facility for the transaction of monetary wire transfers and as a result an envelope containing cash belonging to the plaintiff disappeared from the counter of the defendant's facility. By contrast, in the instant action, the plaintiff alleges not that the facility premises were unsafe but rather that the electric pallet jack provided to the plaintiff by the defendant to operate while unloading his truck had not been properly serviced or maintained.

Similarly, McDermott v. Calvary Baptist Church, 69 Conn.App. 284 (2002), another case cited by the defendant, involved an alleged failure by the defendant to maintain its premises, namely, an alleged hazardous condition consisting of a tree branch overhanging the defendant's parking lot that fell on the plaintiff. The Connecticut Supreme Court stated the well-settled rule in premises liability cases as follows: "A

possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe... In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." (Citation and quotation omitted). Id., at 294. Here the alleged dangerous condition was not to the premises but to the piece of equipment made available to the plaintiff to use there. Therefore, the premises liability cases cited by the defendant are inapposite.

Even assuming *arguendo* that the premises liability standards apply to the instant case, the defendant is not entitled to summary judgment. In its supporting memorandum of law, the defendant states, "...the maintenance-repair records on the pallet jack reflect that it was serviced as needed and on a regular basis and that at no time was there a problem with the braking mechanism or automatic shut [off] system." (Plaintiff's Memorandum of Law in Support of Summary Judgment, pg. 5) The maintenance and repair records which were filed with the defendant's Local Rule 9(c)1 Statement, show exactly the opposite.

It is undisputed that the defendant is responsible for servicing, maintaining and repairing the pallet jack at issue in this case. Pursuant to the plaintiff's request for production of documents, the defendant produced maintenance and service records back to the beginning of 1995 for the electric pallet jack that caused the plaintiff's injuries. John Hensley, then the defendant's maintenance shop foreman, testified at his deposition that from 1995 through 1999, whenever one of the defendant's mechanics performed any maintenance or repair on pallet jacks, they were required to fill out maintenance-repair records. (Hensley depo., p.28, lines 7-12) The past maintenance-

repair records show that the pallet jack that malfunctioned while the plaintiff was operating it on October 19, 1999 was repeatedly plagued with electrical problems, including problems relating to the control handle which is used to stop the jack. The service-repair record for January 17, 1996 indicates "cutout' which Mr. Hensley explained meant that there was a loss of electrical power. (Id. at 41-42). The records for May 20, 1996 and May 22, 1996 contain entries "takes off fast, then jumps fast [into] fast [speed]" which Mr. Hensley admitted were electrical problems relating to a malfunction of the electronic device that controls the acceleration and the functions of travel." (Id. pp 46-47) Furthermore, the repair records for both July 15, 1996 and September 26, 1996 indicate a recurring problem with the "control handle sticking in reverse" (Id., pp. 52-53) Moreover, the record for November 25, 1996 indicates that the "dead man's switch" "wasn't being activated." (Id., pp.54-55) When operating correctly, pushing the control handle up disconnects the dead man's switch thereby shutting off the power to stop the pallet jack. (Id.) This is the very "automatic shut-off" problem alleged to have occurred when the plaintiff was operating the pallet jack and was involved in an accident and severely injured. As Mr. Hensley acknowledged, the lock nut can come loose over time causing the dead man's switch not to operate. (Id., pp. 55-56) An electrical problem on January 16, 1998 caused the pallet jack to come to "an abrupt, severe halt in reversal." (Id., p 56-57) Finally, the repair record for March 12, 1998 states "drops out of high speed", yet another in the long series of electrical problems with the electrical pallet jack in question. (Id., p. 58)

    The defendant's assertion that the maintenance and repair records reflect that the pallet jack was serviced "as needed" and "on a regular basis" is even farther from

what the evidence shows. The General Maintenance Instructions section of the manufacturer's Service and Parts Manual for the model of pallet jack here at issue which was produced by the defendant clearly warns that "[p]ower industrial trucks may become hazardous if adequate maintenance is neglected" and mandates that to prevent serious risk of injury, "[a] scheduled planned maintenance, lubrication and inspection system should be followed." (Excerpt attached as Exhibit A to the plaintiff's Local Rule 9(c)2 Statement; Hensley depo., p. 18-20) The pallet jack truck had a meter that recorded the number of hours of usage. (Id., p. 33) The manufacturer's Service Manual requires inspections of the power disconnect, contact tips, electrical connections, brake operation and travel controls every 100 hours of usage. (Exhibit A) Mr. Hensley testified that preventive maintenance inspections were performed by the defendant every 1,000 miles of usage – <u>ten times</u> the usage amount required by the manual to prevent serious risk of injury to persons operating the pallet jack. (Hensley depo., pp. 28-30)

Finally and most importantly, based on the maintenance and repair records, the defendant did not perform any maintenance, service or inspection of any kind whatsoever to the electric rider pallet jack in question <u>for more than a year</u> prior to October 19, 1999, the date of the plaintiff's accident and injury. The service records consist of handwritten sheets filled out by the mechanics which were then inputted into a computer. Both the defendant's handwritten records and the computer printout have a "gap" of 13 months between a repair performed on September 24, 1998 and the date of the accident involving the plaintiff. Having testified that from 1995 through 1999, whenever one of the defendant's mechanics performed any maintenance or repair on

pallet jacks, they were required to fill out maintenance-repair records (Hensley depo., p.28, lines 7-12), the defendant's mechanic shop foreman was at a complete loss to explain the more than suspicious absence of maintenance or repair records for the year leading up to the accident date.

    Q    Okay. Now based on the [maintenance and repair records] that I'm showing you…was there any maintenance or repair or preventive maintenance done to [the pallet jack at issue] at any time between September 24, 1998 and December 24, 1999?

    A    Without the record, no.

    Q    And I'll show you Plaintiff's Exhibit 2, which is the computer printout. Does Plaintiff's Exhibit 2 indicate that there was any maintenance or repairs performed to [the pallet jack] at any time between September 24, 1998 and December 23, 1999?

    A    No.

    Q    Do you know of any reason why there would be no record for a complete year – or more than a complete year; that is, repair or maintenance records?

    A    No.

    Q    Do you believe that any repair or maintenance records are missing?

    A    I don't know.

(Hensley depo., pp. 59-60)

Mr. Hensley further testified that all of the service and repair records that he knew of had been produced. (Id.) Either the defendant performed no maintenance or repair to the pallet jack for more than a year immediately prior to the malfunction that injured the plaintiff or the defendant committed spoliation by destroying and altering the records to hide damaging information. If the former, the defendant was clearly negligent in failing to perform any preventive inspection, maintenance or repairs for more than a full year prior to the plaintiff's injury. If the latter, the plaintiff is entitled to an adverse inference instruction on the issue of liability against the defendant. See Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2$^d$ Cir. 2001).

The maintenance and repair records show that the pallet jack was serviced multiple times every year from 1995 through 1998. Here the evidence clearly demonstrates that there are genuine triable issues of fact as to whether the defendant was negligent and should be chargeable with constructive notice based on its complete failure to service or maintain the electric pallet jack for more than a year prior to the incident resulting in serious physical injuries to the plaintiff and its clear violation of the safety directives in the service manual. Under Connecticut law, the law applicable in this diversity case, whether a person is negligent is a question of fact for the jury. Abraham v. Young & Rubicam, 240 Conn. 300, 307, 692 A.2d 709 (1997).

As shown by the forgoing and the deposition testimony of the defendant's mechanic shop foreman, genuine issues of material fact exist as to the issues of whether the defendant failed to exercise reasonable care under the circumstances by its unexplained failure to maintain the subject electric pallet jack for more than a year

immediately preceding the plaintiff's accident. Accordingly, the plaintiff's motion for summary judgment must be denied.

THE PLAINTIFF GEORGE PELLEY

By: *(signature)*
Warren L. Holcomb
Federal Bar No. ct13127
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460
(203) 783-1200

## CERTIFICATION

This is to certify that a copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment was mailed the 27th day of October, 2003, first class mail, postage prepaid, to the following:

Jack Miller, Esq.
Regnier, Taylor, Curran & Eddy
Cityplace I, 28th Floor
185 Asylum Street
Hartford, CT 06103

_____
Warren L. Holcomb, Esq.